# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA HENRY,<br>    Plaintiff,<br><br>v.<br><br>BRISTOL HOSPITAL, INC., et al.,<br>    Defendants. | No. 3:13-cv-00826 (SRU) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Laura Henry ("Henry") commenced this action against her former employer, Bristol Hospital, Inc. ("Bristol Hospital" or "the Hospital"), after she was allegedly sexually assaulted by Dr. Olakunle Oluwole ("Dr. Oluwole") on June 11, 2011. Fourth Am. Compl., Doc. No. 128 at ¶¶ 68, 73–75. Henry alleges that Bristol Hospital was negligent in hiring, retaining, and supervising Dr. Oluwole while he retained staff privileges at the Hospital. *Id*. at ¶¶ 274, 281, 303. Henry also asserts that Bristol Hospital is vicariously liable for Dr. Oluwole's alleged sexual misconduct. *Id.* at ¶¶ 329–35. Bristol Hospital moves for summary judgment. *See* Doc. No. 227. On October 23, 2018, I held a hearing on the Motion for Summary Judgment, at which I took the motion under advisement. For the following reasons, Bristol Hospital's Motion for Summary Judgment is **granted** in part and **denied** in part.

## I.    Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## II. Background

Henry was initially hired by Bristol Hospital in August 1986. Fourth Am. Compl., Doc. No. 128 at ¶ 4. In 2011, she held the position of "surgical services associate," where her duties included "booking surgeries for surgeons' offices" and "ensuring that operating rooms were prepared for scheduled surgeries." Def's Local Rule 56(a)(1) Stmt., Doc. No. 229 at ¶ 2. Dr. Oluwole was employed as a general surgeon by Bristol Hospital Multi-Specialty Group Inc. ("BHMSG") on or about August 17, 2009. *Id.* at ¶ 4. As a member of BHMSG, Dr. Oluwole retained staff privileges to practice at Bristol Hospital. *See* Pl's Local Rule 56(a)(2) Stmt., Doc. No. 237-1 at ¶ 4.

On March 30, 2011, Henry became Dr. Oluwole's patient. *See id.* at ¶ 8. Specifically, Henry consulted Dr. Oluwole to follow up on a prior lap band procedure she had undergone in December 2009. Def's Local Rule 56(a)(1) Stmt., Doc. No. 229 at ¶ 9. On June 11, 2011, Henry contacted Dr. Oluwole to address pain and discomfort she experienced after her previous lap band procedure. *Id.* at ¶ 10. Upon her arrival to the BHMSG medical building, Dr. Oluwole

3

instructed Henry to accompany him to his office so he could retrieve a needle to remove built up fluids causing Henry discomfort. *See* Pl's Opp., Doc. No. 237 at 6.

Henry alleges that, once she entered Dr. Oluwole's office, he grabbed her by the arm and attempted to kiss her. *Id.* Henry rejected Dr. Oluwole's initial advance and was instructed to "lay on her back, and unbuckle her jean pants, so [Dr. Oluwole] could gain access to her port." *Id.* at 6–7. Shortly after Henry removed her pants, Dr. Oluwole "grabbed [Henry] by the hair and yanked her head towards his erect and exposed penis." *Id.* at 7. Henry tried to escape but was held down by Dr. Oluwole who then sexually assaulted her. *Id.* After the assault, Henry continued to receive treatment from Dr. Oluwole who performed a second surgery on Henry in November 2011. Def's Local Rule 56(a)(1) Stmt., Doc. No. 229 at ¶ 13.

Following the alleged assault, Dr. Oluwole continued to sexually harass Henry at Bristol Hospital during normal business hours. *See* Pl's Opp., Doc. No. 237 at 7–8; Henry Dep., Doc. No. 237-82 at 118. Dr. Oluwole made unsolicited sexual comments to Henry and would "come by [her] office . . . and chastise [her]" until September 2012. Henry Dep., Doc. No. 237-82 at 118. On one occasion in September 2012, Henry's daughter stopped by Bristol Hospital to show Henry her newborn grandson. *Id.* at 119. When Dr. Oluwole arrived, he reached for the baby and rubbed his body against Henry. *Id.* On another day that month,[1] Henry states that Dr. Oluwole told her that "she needed to have sex, so she did not develop cobwebs." Pl's Opp., Doc. No. 237 at 8; Henry Dep., Doc. No. 237-82 at 118. Dr. Oluwole's repeated encounters with Henry made her feel "very, very uncomfortable." Henry Dep., Doc. No. 237-82 at 119.

---

[1] There is a dispute in the record regarding whether this statement was made in September 2011, or September 2012. Henry's 2015 affidavit states that the "cobweb" comment occurred the first September after the assault in 2011. *See* Def's Reply, Doc. No. 244 at 5–6, n.2. Henry's Opposition states that this comment occurred in 2012. *See* Pl's Opp., Doc. No. 237 at 8.

4

On September 14, 2012, Henry reported the June 11, 2011 incident to her boss, Lynne Ramer. *See* Def's Local Rule 56(a)(1) Stmt., Doc. No. 229 at ¶ 21; Ex. 38 to Pl's Opp., Doc. No. 237-42 at 3. Later that day, Human Resources commenced an investigation into the allegations and suspended Dr. Oluwole pending the outcome. Def's Local Rule 56(a)(1) Stmt., Doc. No. 229 at ¶ 22–23; Ex. 38 to Pl's Opp., Doc. No. 237-42 at 3. Dr. Oluwole denied the assault but did admit having an "uncomfortable intimate incident" with Henry where "he kiss[ed] and fondl[ed]" her. Ex. 12 to Pl's Opp., Doc. No. 237-14 at 3. BHMSG terminated Dr. Oluwole with "cause" on October 2, 2012, due to his admission of an inappropriate encounter with Henry. *Id.*

Henry filed the current action on June 10, 2013, alleging fifteen counts against Bristol Hospital and Dr. Oluwole to recover compensatory and punitive damages stemming from Dr. Oluwole's alleged sexual misconduct. *See* Compl., Doc. No.1 at ¶¶ 31–132. Henry never served Bristol Hospital with the original complaint. Def's Br., Doc. No. 228 at 12. Instead, Henry filed her First Amended Complaint (doc. no. 8) on September 9, 2013, which was served on Bristol Hospital on November 11, 2013. *Id.* In the First Amended Complaint, Henry brought claims against Bristol Hospital for Title VII sexual harassment, false imprisonment, negligent and intentional infliction of emotional distress, negligent hiring, and negligence. *Id.* at 5–6. After several motions for leave to amend, Henry filed a Fourth Amended Complaint on August 20, 2015, which is now the operative pleading. *See generally* Fourth Am. Compl., Doc. No. 128.

In her Fourth Amended Complaint, Henry asserts claims against Bristol Hospital for: (1) Title VII sexual harassment (Count One), (2) intentional infliction of emotional distress (Count Eleven), (3) negligent infliction of emotional distress (Count Twelve), (4) negligent hiring,

retention and supervision (Counts Thirteen and Fourteen), (5) negligence (Count Fifteen), and (6) negligence through an agent or supervisor (Count Sixteen).[2]

On April 12, 2016, Bristol Hospital moved to dismiss Counts One (Title VII sexual harassment), Eleven (intentional infliction of emotional distress) and Twelve (negligent infliction of emotional distress) of the Fourth Amended Complaint. Def's Mot. to Dismiss, Doc. No. 140. United States District Judge Alfred V. Covello granted Bristol Hospital's motion and dismissed Counts One, Eleven and Twelve against Bristol Hospital. *See* Mot. to Dismiss Order, Doc. No. 181. Judge Covello also granted Henry's Motion for Default Judgment against Dr. Oluwole. *See* Mot. for Default Order, Doc. No. 103. Thereafter, the case was transferred to my docket. Bristol Hospital is currently the only remaining defendant in the case. Henry asserts the following claims against Bristol Hospital:

> **Count Thirteen**: Negligent hiring, retention and supervision
> **Count Fourteen**: Negligent hiring, retention and supervision
> **Count Fifteen**: Negligence
> **Count Sixteen**: Negligence through agent or supervisor

Bristol Hospital now moves for summary judgment on all of Henry's remaining claims.

## III. Discussion

### A. Henry's Claims Are Tolled Because of the Continuing Course of Conduct Doctrine

#### 1. A Two-Year Statute of Limitations Applies

Bristol Hospital's primary argument is that Henry's claims are untimely because they were not brought within the statute of limitations. Def's Br., Doc. No. 228 at 10. Both parties agree that Henry's negligence claims are subject to the statute of limitations provided in Connecticut General Statutes Section 52-584.

---

[2] The Fourth Amended Complaint also added BHMSG and three individual physicians as additional defendants in Henry's action.

> No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon . . . [or] hospital . . . shall be brought but *within two years* from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of.

Conn. Gen. Stat. § 52-584 (emphasis added).

Both parties also agree that Connecticut state law governs when state law claims filed in federal court are considered "commenced" for purposes of the statute of limitations. *See Kotec v. Japanese Educ. Inst. of N.Y.*, 321 F. Supp. 2d 428, 431 (D. Conn. 2004). Under Connecticut law, an action has "commenced" for purposes of the statute of limitations on the date the complaint is served on the defendant. *Id.* "It is well settled that in Connecticut a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant and that, in a federal diversity action, such state rules control and not Fed. R. Civ. P. 3." *Id.* (internal citations omitted).

In this case, there is no dispute that Henry filed her original and first amended complaints on June 10, 2013 and September 9, 2013, respectively. *See* Doc. Nos. 1, 8. However, Bristol Hospital was not served with a complaint until November 11, 2013. *See* Summons, Doc. No. 11. The principal question raised by the summary judgment motion is when the two-year clock began to run for Henry to serve Bristol Hospital.

Bristol Hospital argues that Henry's "two-year limitation period under General Statutes § 52-584 expired on June 11, 2013[3]—two years after Dr. Oluwole's alleged sexual assault of [Henry.]" Def's Br., Doc. No. 228 at 12. Because Bristol Hospital was not served until November 11, 2013, exactly two years and five months after Dr. Oluwole's assault on Henry,

---

[3] Bristol Hospital also cites a portion of Henry's Original Complaint, where her attorney admits that "the statute of limitations will expire on June 11, 2013, thereby necessitating her filing this action at this time prior to issuance of a right to sue." Def's Br., Doc. No. 228 at 10 (quoting Compl., Doc. No. 1 at ¶ 3).

7

Bristol Hospital contends that her "claims of negligence are untimely and judgment should enter for Bristol Hospital on Counts Thirteen to Sixteen on the Fourth Amended Complaint." *Id.*

Henry in response argues that her two-year clock did not start on June 11, 2011, but rather began to run in September 2012, because her negligence claims arose out of Bristol Hospital's "continuous course of conduct" that persisted up and until September 2012, the last alleged date of Dr. Oluwole's sexual misconduct at Bristol Hospital.[4] *See* Pl's Opp., Doc. No. 237 at 13. She cites *Fichera v. Mine Hill Corp.,* where the Connecticut Supreme Court held that a "continuing course of conduct" may toll the two-year statute of limitations:

> [w]here [the court] ha[s] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.

207 Conn. 204, 210 (1988) (internal quotation marks omitted); Pl's Opp., Doc. No. 237 at 14.

Henry argues that Bristol Hospital's initial wrong was negligently hiring, retaining, and supervising Dr. Oluwole after hospital officials knew of Dr. Oluwole's propensity to engage in sexual misconduct as early as January 2010. *See* Pl's Opp., Doc. No. 237 at 16. Despite knowledge of numerous reports documenting Dr. Oluwole's misconduct towards female staff, Bristol Hospital failed to warn Henry of Dr. Oluwole's "dangerous" and unethical propensities and failed to terminate his employment until Henry notified her boss of Dr. Oluwole's assault. *Id*. Henry also contends that Bristol Hospital's negligent retention and supervision of Dr.

---

[4] Henry in the alternative argues that her two-year clock did not start on June 11, 2011, but rather began to run in May 2013, when Henry sought medical treatment to address her "deteriorating mental and emotional conditions" that arose because of Dr. Oluwole's assault. *See* Pl's Opp., Doc. No. 237 at 12. Henry alleges that the limitations period accrued on May 2013, when Henry consulted her therapist and was told that her physical and emotional injuries where the result of Dr. Oluwole's assault. *See id.* at 13. That argument is unavailing because Henry was aware of the facts underlying her claims prior to the consultation with her therapist in May 2013. In 2011, Henry "possessed knowledge sufficient to have been able to commence the instant action in a timely fashion." *Holmes v. Lorch*, 329 F. Supp. 2d 516, 531 (S.D.N.Y. 2004).

8

Oluwole continued through his suspension in September 2012. *See id*. at 18. Because of Bristol Hospital's "continuous course" of negligent conduct, Dr. Oluwole was able to sexually harass Henry and other female staff members. *See id.* at 20–21. Therefore, Henry argues that the statute of limitations began to run in September 2012, and her action was timely when she served Bristol Hospital on November 11, 2013.

In response, Bristol Hospital argues that "[t]he continuing course of conduct doctrine does not apply here because there are no allegations, and no evidence of, any ongoing breach of any duty [owed] to [Henry]." Def's Br., Doc. No. 228 at 13. Bristol Hospital asserts that "Dr. Oluwole's alleged sexual assault which was a singular, one-time event . . . took place on a date certain – June 11, 2011 . . . . There were no alleged subsequent assaults by Dr. Oluwole and no ongoing negligence on the part of Bristol Hospital related to the alleged assault." *Id.*

Here, Bristol Hospital knew of Dr. Oluwole's sexual harassment allegations from January 2010 to September 14, 2012.[5] *See, e.g*., Pl's Opp., Doc. No. 237 at 16; Ex. 28, Doc. No. 237-31; Ex. 38. Doc. No. 237-42. However, Bristol Hospital contends that it was unaware of Dr. Oluwole's sexual assault on Henry until the incident was reported to Human Resources in September 2012. *See* Def's Br., Doc. No. 228 at 4–5. Henry did not tell anyone at Bristol Hospital about the alleged assault until she told Ms. Ramer in mid-September 2012. *See* Henry's Dep., Doc. No. 237-83 at 129; Reckdenwald Dep., Doc. No. 237-71 at 50. Once Human Resources became aware of Dr. Oluwole's sexual assault allegations, he was immediately

---

[5] Dr. Oluwole's termination letter indicates that hospital officials knew of numerous reports of sexual misconduct involving Dr. Oluwole beginning in January 2010. For example, in January 2010 officials received complaints from several staff members that Dr. Oluwole inappropriately touched staff, sent unwanted text messages to other employees, and made inappropriate and lewd comments in the break room. *See generally*, Ex. 28 to Pl's Opp., Doc. No. 237-31; Ex. 38 at Doc. No. 237-42.

9

suspended and later terminated. *See* Ex. 12 to Pl's Opp., Doc. No. 237-14; Reckdenwald Dep., Doc. No. 237-73 at 98–99.

Because Bristol Hospital had no knowledge of Dr. Oluwole's sexual assault from June 11, 2011 until September 14, 2012, it argues that Henry must base her negligence theories on Dr. Oluwole's continued course of sexual harassment. Bristol Hospital notes however, that under Connecticut law a negligent hiring and retention claim cannot be based on acts of sexual harassment alone. *See* Def's Br., Doc. No. 228 at 13–14.

2. Henry's Claims Depend Upon Tolling

Here, Henry failed to serve Bristol Hospital within two years of Dr. Oluwole's alleged June 11, 2011 sexual assault. Although Henry filed her original complaint on June 10, 2013, she did not serve Bristol Hospital until November 11, 2013, five months later. Therefore, her action had not "commenced" within two years of the event giving rise to her damage claims. Accordingly, Henry's claims are untimely under the two-year limitation period provided in General Statutes § 52-584 unless tolled by the continuing course of conduct doctrine.

3. The Continuing Course of Conduct Doctrine May Apply

In this case, the continuing course of conduct doctrine may toll the statute of limitations. There are genuine disputes of material fact regarding whether (1) Bristol Hospital was negligent in its initial decision to hire Dr. Oluwole, and (2) Bristol Hospital's duty to fire or more closely supervise Dr. Oluwole continued after the date of the alleged sexual assault.

The Connecticut Supreme Court has recognized the continuing course of conduct doctrine in cases involving negligence claims. *See Watts v. Chittenden*, 301 Conn. 575, 583 (2011).

> [T]he statute of limitations and period of repose contained in [General Statutes] § 52–584 may be tolled, in the proper circumstances, under either the continuous course of conduct doctrine or the continuing treatment doctrine, thereby allowing a plaintiff to bring an

10

action more than three years after the commission of the negligent act or omission complained of.

*Id*. (internal quotations omitted).

In negligence actions, to support a determination that a continuing course of conduct tolls the statute of limitations "there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." *Fichera*, 207 Conn. at 209. The first requirement for the continuing course of conduct doctrine is that "the defendant must have committed an initial wrong upon the plaintiff." *Watts*, 301 Conn. at 585 (internal citation omitted). Second, there must be evidence that the defendant's breach of a duty remained after the defendant committed the initial wrong.[6] *Id.* In actions involving negligent hiring, retention, or supervision claims, the original wrong must be related to some underlying tortious act by an employee. *See Abate v. Circuit-Wise, Inc.*, 130 F. Supp. 2d 341, 344 (D. Conn. 2001); *see also Doe 52 v. Mayo Clinic Health Sys.-Eau Claire Clinic, Inc.*, 98 F. Supp. 3d 989, 998 (W.D. Wis. 2015) (quoting *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 342 (1997)).

A defendant is not liable unless it "knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 246 (D. Conn. 2005) (quoting *Abate*, 130 F. Supp. at 344).

---

[6] Courts have held this requirement "to be satisfied when there was wrongful conduct of a defendant related to the prior act." *Watts v. Chittenden*, 301 Conn. 575, 585 (2011).

### i. Bristol Hospital's Initial Decision to Hire Dr. Oluwole

Whether Bristol Hospital breached a duty to Henry when it initially hired Dr. Oluwole in August 2009 is a question of fact. Henry provides specific facts to establish that Bristol Hospital knew or should have known that Dr. Oluwole was unfit to serve as a general surgeon based on his prior misconduct, and that Henry suffered an injury related to his unfitness. *See Shanks v. Walker*, 116 F. Supp. 2d 311, 314 (D. Conn. 2000) (internal citations omitted). Specifically, Bristol Hospital's February 24, 2009 background investigation of Dr. Oluwole revealed that he "was an intern and resident in general surgery [at Strong Memorial Hospital at the University of Rochester] from 06/26/1997 until 06/30/1999 when he was terminated for professional misconduct." Ex. 51 to Pl's Opp., Doc. No. 237-55 at 4. In addition, Dr. Oluwole's file at his previous employer, Warren General Hospital, states that on September 21, 2006 the CEO of Warren Hospital "had a discussion with Dr. Oluwole regarding the expectation that inappropriate or vulgar language will not be used on the premises at Warren General Hospital." Ex. 52 to Pl's Opp., Doc. No. 237-56 at 4. Based on Dr. Oluwole's background investigation, there is a factual dispute regarding whether Bristol Hospital knew or should have known of Dr. Oluwole's previous inappropriate conduct before hiring him in August 2009.

In its Motion, Bristol Hospital contends that Henry's claims fail "because there is no evidence that Bristol Hospital knew or should have known that Dr. Oluwole would allegedly commit a sexual assault." Def's Br., Doc. No. 228 at 17. However, "the matter of foreseeability is a question of proximate cause and the question of proximate cause is ordinarily a question of fact." *See Di Teresi v. Stamford Health Sys., Inc.*, 2007 WL 1675010 at *2 (Conn. Super. Ct. May 23, 2007) (internal quotation marks omitted). Conclusions of proximate cause "are to be drawn by the jury and not by the court." *Id.* "It becomes a conclusion of law only when the

12

mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." *Trzcinski v. Richey*, 190 Conn. 285, 295 (1983) (internal quotation marks omitted).

As noted above, Dr. Oluwole's record of professional misconduct at two separate hospitals prior to his hiring raises a genuine dispute of material fact concerning whether Bristol Hospital should have foreseen that Dr. Oluwole might engage in sexual misconduct while working at Bristol Hospital. Because I am required to draw all reasonable inferences in Henry's favor, I cannot find as a matter of law that Bristol Hospital should not have foreseen that Dr. Oluwole might engage in sexual misconduct when it hired him in 2009.

### ii. Dr. Oluwole's Continuing Course of Sexual Harassment

In addition, a factual question arises whether Bristol Hospital should have fired Dr. Oluwole before officials became aware of the 2011 alleged sexual assault on September 14, 2012. There were numerous complaints detailing Dr. Oluwole's sexual misconduct before anyone at the Hospital knew of the June 11, 2011 incident.

On January 20, 2010, officials received a letter concerning "inappropriate and lewd comments" made by Dr. Oluwole in the staff break room.[7] Ex. 40 to Pl's Opp., Doc. No. 237-44 at 2. Officials met with Dr. Oluwole on January 28, 2010, but declined to terminate his employment stating that "if a similar incident occurs again, especially if a formal complaint is filed, the consequences would be significant and would interfere with Dr. Oluwole's success at Bristol Hospital." *Id*. at 3. In September 2010, officials received another letter, alleging that Dr.

---

[7] According to the letter, on January 10, 2010 Dr. Oluwole stated that "cleavage is not appropriate at work" and that "he was not a boob man . . . [he] can't see the difference between a B or double D . . . only good thing is when a penis is between them." Ex. 40 to Pl's Opp., Doc. No. 237-44 at 2. He then asked a staff member, "how often do you do that in a year?" *Id.* The letter also indicated that Dr. Oluwole was being "touchy on the back and lower back" of a staff member. *Id.*

Oluwole sent a Dunkin' Donuts employee unwanted and inappropriate text messages. *See* Ex. 42 to Pl's Opp., Doc. No. 237-46 at 2–3. Notwithstanding, in June 2011, another female employee alleged that Dr. Oluwole "inappropriately touched her and made inappropriate sexual comments to her." Ex. 28 to Pl's Opp., Doc. No. 237-31 at 2. Despite those allegations, Bristol Hospital chose to retain Dr. Oluwole, stating in a July 7, 2011 letter that "[y]our successes at Bristol Hospital is in our mutual interest. Our expectation is that you will . . . continue to provide Bristol Hospital's patients with the highest level of clinical care." Ex. 39 to Pl's Opp., Doc. No. 237-43 at 2. The alleged sexual assault occurred on June 11, 2011. Although officials were unaware of the sexual assault until September 2012, there is a factual question whether Dr. Oluwole should have been terminated before June 2011, based on "several incidents [that] occurred [before September 2012] which [ran] counter to Greater Bristol Primary Care Group's standards of conduct and professional behavior." *Id.*

Henry also alleges that Dr. Oluwole's sexual harassment continued after the alleged assault up and until his suspension in September 2012. In September 2012, Henry stated that Dr. Oluwole rubbed up against her during a visit to her office. Henry Dep., Doc. No. 237-82 at 118–19. Also, in September 2012, Henry testified that Dr. Oluwole stated that "she needed to have sex, so she did not develop cobwebs." *Id*. Dr. Oluwole was finally terminated on October 2, 2012, after he admitted having an "uncomfortable intimate incident" with Henry. Ex. 12 to Pl's Opp., Doc. No. 237-14 at 3.

The continuing course of conduct doctrine applies because Bristol Hospital's duty not to hire, not to retain, and not to negligently supervise Dr. Oluwole continued until he was fired in 2012. Whether the Hospital's alleged negligence enabled Dr. Oluwole to allegedly sexually harass staff until he was fired in 2012 presents a genuine issue of material fact. Although the

14

2011 sexual assault is more serious than the other allegations in the record, it is consistent with Dr. Oluwole's course of sexual harassment which continued through 2012. Thus, a jury could find facts that support the tolling of the statute of limitations. Accordingly, Bristol Hospital is not entitled to summary judgment on its statute of limitations argument.

  B. Although Dr. Oluwole Was Not an Employee of Bristol Hospital, the Hospital May Be Liable for Negligent Hiring, Retention, and Supervision

Bristol Hospital's second argument is that because Dr. Oluwole was an employee of BHMSG, and not Bristol Hospital, Henry's negligence claims fail as a matter of law. *See* Def.'s Br., Doc. No. 228 at 16. To support its argument, Bristol Hospital cites *Spaulding v. Rovner*, which states: "[n]o Connecticut court case has been cited, nor has the court found any case, holding that a physician having staff privileges at a hospital is thereby an actual agent of the hospital." 2009 Conn. Super LEXIS 942, *10.

In *Spaulding*, the court found that a physician was an independent contractor of Stamford Hospital, rather than an employee, because the patient was primarily seeking care from the individual doctor, and not from the hospital. *Id*. at *21. When deciding whether a physician is an employee or independent contractor of a hospital, courts look for specific facts such as:

> [w]hether the doctor received compensation from the hospital; any evidence that the hospital exercised any control over the manner in which the doctor practiced medicine, any evidence that the hospital set the doctor's schedule or dictated what types of procedures he performed, any contract between the doctor and the hospital evidencing an intent to create an agency relationship; and membership of the doctor in an independent professional practice with offices outside the hospital where the doctor saw patients who were not hospitalized and from which he billed his patients for his services.

*See id*. *12–13. (citing *Menzie v. Windham Community Memorial Hospital*, 774 F. Supp. 91, 95 (D. Conn. 1991)). Bristol Hospital contends that because Dr. Oluwole was a BHMSG surgeon who merely retained staff privileges at the Hospital, Bristol Hospital is not liable for any negligent hiring, retention, or supervision of Dr. Oluwole. *See* Def.'s Br., Doc. No. 228 at 16.

15

In response, Henry argues that Dr. Oluwole's contract authorizing him to perform surgeries at Bristol Hospital "bind[s] his conduct to the hospital." Pl's Local Rule 56(a)(2) Stmt., Doc. No. 237-1 at ¶ 7. In addition, Henry cites the deposition testimony of Susan Sylvestre, the former assistant vice president of BHMSG, who testified that Bristol Hospital "is responsible for all of our H.R. functions . . . including hiring physicians and performing background checks on all incoming physicians." Sylvestre Dep., Doc. No. 237-78 at 9–11. In addition, Ms. Sylvestre testified that BHMSG physicians were paid through the same payroll system as Bristol Hospital. *See* Sylvestre Dep., Doc. No. 237-78 at 11.

Although Dr. Oluwole was not an employee of Bristol Hospital, a trier of fact could conclude that Bristol Hospital exercised sufficient control over him to be liable for negligent hiring, retention, or supervision. Unlike the plaintiff in *Spaulding*,[8] Henry alleges that Bristol Hospital itself was negligent in hiring, retaining, and supervising Dr. Oluwole. Bristol Hospital's Board of Directors and Department of Surgical Services were ultimately responsible for H.R. decisions relating to the training, hiring, and firing of BHMSG general surgeons.[9] *See* Sylvestre Dep., Doc. No. 237-78 at 8–11. All complaints of sexual misconduct at Bristol Hospital were reported to Bristol Hospital's H.R. Department. *See* Sylvestre Dep., Doc. No. 237-78 at 17. Any counseling that occurred after a sexual misconduct complaint was conducted by Bristol Hospital's H.R. Department. *See id*. at 25. Any termination decision was ultimately made by Bristol Hospital. *See id.* at 9. Although Dr. Oluwole was not an employee of Bristol

---

[8] The plaintiff in *Spaulding v. Rovner* relied exclusively on a vicarious liability theory to hold Stamford Hospital liable for the alleged negligence of a surgeon. *See* 2009 Conn. Super LEXIS 942, *10.

[9] For example, a memorandum dated July 22, 2009 from the Section Chief of Surgical Services to Bristol Hospital's Chief of Staff stated in part, "Olakunle Oluwole, MD's Credentials file meets the conditions specified for expedited appointment . . . . The file has been reviewed and found to be complete and fully demonstrate current competency, education, training and good ethical standing." Ex. 25 to Pl's Opp., Doc. No. 237-28 at 3.

16

Hospital, a reasonable jury could find that Bristol Hospital is liable for negligently retaining and supervising him.

A reasonable jury could find facts sufficient to hold Bristol Hospital liable for Dr. Oluwole's actions even though he was not directly employed by the Hospital. Accordingly, Bristol Hospital is not entitled to summary judgment on its independent contractor argument.

C. <u>Bristol Hospital Is Not Vicariously Liable for Dr. Oluwole's Alleged Sexual Assault</u>

Finally, Bristol Hospital argues that it is not vicariously liable for Dr. Oluwole sexual alleged assault of Henry. "Putting aside the obvious—that sexual assault is an intentional not negligent act—this Court has already twice held in this Action that Bristol Hospital cannot be vicariously liable for Dr. Oluwole's alleged sexual assault because sexual assault constitutes a clear abandonment of a physician's duties." *Id.* (citing to Order, Doc. No. 37 at 13; Order Doc. No. 181, at 13–16).

Henry in response argues that when Dr. Oluwole assaulted Henry, he was performing his duties as a surgeon which is in the "nature of the business performed by both Bristol Hospital and [BHMSG] . . . and both entities are organized to allow the activity that [Dr. Oluwole] was engaged in." Pl's Opp., Doc. No. 237 at 36.

Summary judgment is proper on Henry's vicarious liability claim. Under Connecticut law, an employer can be held liable as a principal for the actions of an agent, if the agent's action is "an essential part" of the employer's business and is "of such character that it ordinarily or appropriately would be performed" in the prosecution of the principal's business. *Zimmerman v. MacDermid, Inc*., 130 Conn. 385, 388 (1943). Additionally, "[w]ith rare exceptions, courts applying Connecticut law have consistently held that sexual abuse is outside the scope of the abuser's employment." *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 286 (D. Conn. 2013).

17

Henry provides no evidence that Dr. Oluwole's assault was in any way "an essential part" of Bristol Hospital's business. This Court previously ruled that "[d]espite the sequence of events and the fact that Oluwole performed a medical procedure after, his sexual assault of Henry represents a clear abandonment of his duties as a physician . . . [and is] considered to be outside the scope of employment." *See* Order*,* Doc. No. 37 at 13. A sexual assault is outside the scope of any agency relationship between the Bristol Hospital and Dr. Oluwole. Accordingly, I **grant** summary judgment in favor of Bristol Hospital on Count Sixteen.

**IV.     Conclusion**

For the reasons stated above, Bristol Hospital's Motion for Summary Judgment is **granted** with respect to Count Sixteen and **denied** with respect to Counts Thirteen, Fourteen, and Fifteen.

So ordered.

Dated at Bridgeport, Connecticut, this 25th day of March 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge