UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA HENRY,<br>     Plaintiff,<br><br>     v.<br><br>BRISTOL HOSPITAL, INC., et al.,<br>     Defendants. | No. 3:13-cv-00826 (SRU) |

### RULING ON PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL

Laura Henry ("Henry") filed this action against her former employer, Bristol Hospital, Inc., ("Bristol Hospital"), after she was allegedly sexually assaulted by physician Dr. Olakunle Oluwole ("Dr. Oluwole") on June 11, 2011. Fourth Am. Compl., Doc No. 128 at ¶¶ 68, 73–75. Henry alleged that Bristol Hospital was negligent in hiring, retaining, and supervising Dr. Oluwole while he retained staff privileges at Bristol Hospital. *Id.* at ¶¶ 274, 281, 303. On October 28, 2019, following a week-long jury trial, the jury rendered a verdict in favor of Bristol Hospital. *See* Doc. No. 342. Henry now challenges that verdict, moving for judgment as a matter of law, or in the alternative, a new trial. *See generally* Pl's Mem. in Supp. Mot. for Judgment/Mot. for New Trial ("Pl's Mem."), Doc. No. 348-1.

For the reasons that follow, Henry's motion is **denied**.

**I.**    **Background**

Henry began working for Bristol Hospital in 1986. Trial Tr., 10/23/20, at 154.[1] In 2011, Henry was referred to Dr. Oluwole, a bariatric surgeon at Bristol Hospital, to address symptoms

---

[1] Trial transcript citations are to a rough draft transcript.

related to a lap band surgery she received in 2009. *Id*. at 10, 174. On Saturday, June 11, 2011, Henry met with Dr. Oluwole at Bristol Hospital's Medical Office Building ("MOB") for a procedure to remove excess fluids from her abdomen. Trial Tr., 10/24/20, at 54. The procedure occurred after hours while the MOB was closed to patients. Trial Tr., 10/22/20, at 185. At some point during the consultation, Dr. Oluwole engaged in sexual behavior with Henry. *Id.* at 99.

In September 2012, Bristol Hospital officials received a complaint alleging that Dr. Oluwole sexually assaulted Henry in the MOB during the June 11, 2011 office visit. Trial Tr., 10/21/20, at 105. Hospital officials immediately commenced an investigation. *Id*. at 106. The investigation revealed that Dr. Oluwole had a history of inappropriate comments towards female staff members at Bristol Hospital. *Id*. at 168–70. As a result, on October 2, 2012, Dr. Oluwole was terminated. *Id.* at 178. Bristol Hospital officials never concluded whether Dr. Oluwole sexually assaulted Henry on June 11, 2011. *Id*. at 235.

During trial, Henry maintained that Dr. Oluwole sexually assaulted her. Trial Tr., 10/24/20, at 15–17. Dr. Oluwole testified that Henry initiated the sexual encounter. Trial Tr., 10/22/20, at 186. Dr. Oluwole further testified that after the incident, they both continued to send text messages of a sexual nature to each other. *Id*. at 190. Henry also testified that in September 2012, Dr. Oluwole assaulted her a second time when he rubbed his body against her while she was showing her newborn grandson around Bristol Hospital. Trial Tr., 10/24/20, at 85–87. Dr. Oluwole also denied that allegation. Trial Tr., 10/22/20, at 196.

After five days of testimony and approximately five hours of deliberation, the jury returned a verdict for Bristol Hospital regarding Henry's negligence claims. *See* Doc. No. 342. The jury found, as a dispositive factual matter, that Henry failed to prove by a preponderance of

the evidence that Dr. Oluwole sexually assaulted her in June 2011 or assaulted her in September 2012.  *Id.*

## II. Standard of Review

### A. Judgment as a Matter of Law

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis. *See* Fed. R. Civ. P. 50.  The standard under Rule 50 is the same as that for summary judgment: A court may not grant a Rule 50 motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) (citation and internal quotation marks omitted). Thus, in deciding such a motion, "the court must give deference to all credibility determinations and reasonable inferences of the jury . . . and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence."  *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted).  In short, the court cannot "substitute its judgment for that of the jury."  *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995) (citations omitted). Rather, judgment as a matter of law may only be granted if:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
>
> (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.

*Galdieri-Ambrosini*, 136 F.3d at 289 (quoting *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir. 1994)) (internal quotation marks omitted); *see also Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir. 1997).

B. Motion for a New Trial

In contrast, the decision whether to grant a new trial following a jury trial under Rule 59 is "'committed to the sound discretion of the trial judge.'" *Stoma v. Miller Marine Servs., Inc.*, 271 F. Supp. 2d 429, 431 (E.D.N.Y. 2003) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992), *abrogated on other grounds by Yung v. Lee*, 432 F.3d 142, 147 (2d Cir. 2005)). A new trial "'should be granted when, in the opinion of the district court, the jury reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *Id.*

**III.   Discussion**

A. There is Sufficient Evidence to Support the Jury's Verdict

Henry first moves for judgment as a matter of law, arguing that "there was a complete absence of evidence" supporting the jury's verdict. Pl's Mem. at 20. In an attempt to reargue the case, she states that the evidence documenting Dr. Oluwole's continued course of misconduct towards female employees at Bristol Hospital supports only one conclusion; that Bristol Hospital was negligent in hiring, retaining, and supervising him. *See id*. at 4.

In order to hold Bristol Hospital liable under Connecticut law, Henry was required to prove that Dr. Oluwole engaged in an underlying tortuous act while he retained staff privileges at Bristol Hospital. *See, e.g., Fetcho v. Hearst Conn. Post, LLC*, 103 F. Supp. 3d 207, 221 (D. Conn. 2015) ("The Post cannot be liable for negligent supervision without an underlying showing of tortious conduct by its employees."). Accordingly, I instructed the jury that "[i]n order for Bristol Hospital to be held liable for negligently hiring, retaining, or supervising Dr.

Oluwole, [Henry] must prove by a preponderance of the evidence that Dr. Oluwole engaged in tortious conduct towards her in June 2011 or September 2012." Trial Tr., 10/28/20, at 13. Although there was evidence that Dr. Oluwole had a previous history of inappropriate conduct, the jury unanimously found that Henry failed to prove by a preponderance of the evidence that Dr. Oluwole engaged in tortious conduct against her. *See* Doc. No. 342. There is no indication that the jury's verdict was the result of surmise and conjecture. *See Galdieri-Ambrosini*, 136 F.3d at 289.

      For five days, the jury heard testimony from Henry, Dr. Oluwole, and several former and current Bristol Hospital officials. Henry does not provide any factual basis for her request for judgment as a matter of law other than reiterating that Dr. Oluwole's file was littered with allegations of misconduct. Evidence of Dr. Oluwole employment history was admitted into evidence and considered by the jury. The jury was also presented with evidence that undermined Henry's claims. For example, there was testimony that immediately following their sexual encounter, Henry took pictures of Dr. Oluwole on his motorcycle, framed them, and then delivered the pictures to Dr. Oluwole with a handwritten note stating, "[b]oth pics are in the frame. I like the other one. Only thing you cannot see the whole bike. Enjoy the pics I am sure there will be many more." Trial Tr., 10/24/20, at 117.

      To the extent Henry argues that Dr. Oluwole's lack of participation during trial confused or misled the jury, that argument is unavailing. I expressly noted in the jury charge that the jury "should not speculate why Dr. Oluwole is not a party at this trial." Trial Tr., 10/28/20, at 12. Moreover, Dr. Oluwole's default has no bearing on whether Bristol Hospital was liable for negligent hiring, retaining, and supervising him.

Based on the evidence in the record, there is no factual basis to overturn the jury's verdict.[2]  Therefore, Henry's motion for judgment as a matter of law is **denied**.

### B. There Are No Grounds for a New Trial

In the alternative, Henry moves for a new trial under Rule 59.  She argues that the first two questions on the verdict on sheet, which asked the jury to find whether Dr. Oluwole committed a tortious act against Henry, were prejudicial.  *See* Pl's Mem. at 22.  Henry contends that Dr. Oluwole's liability "was never at issue [during] trial" because he willfully defaulted.  *Id.*  "In effect, because of the presence of the first question on the verdict sheet pertaining to [Dr. Oluwole's] liability, the jury must necessarily have believed that [Dr. Oluwole's] liability was still in contention at trial."  *Id*.

Henry is correct that due to his willful default, Dr. Oluwole is "deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability."  *Equal Employment Opportunity Comm'n v. Benni's, LLC*, 2008 WL 11479250, at *3 (D. Conn. Aug. 22, 2008) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)).  The issue presented at trial, however, was whether Bristol Hospital was liable for its own negligence.  As discussed above, Henry was required under Connecticut law to prove by a preponderance of evidence that Dr. Oluwole committed a tortious act.  Without a factual finding that Dr. Oluwole engaged in tortious conduct, Bristol Hospital cannot be held liable for Henry's negligence claims.

---

[2] Henry's Rule 50(b) motion is also procedurally flawed.  Rule 50 provides that a Rule 50(a) motion must "be made at any time before the case is submitted to the jury," and that the movant may renew the motion "[n]o later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged."  Fed. R. Civ. P. 50.  Here, Henry failed to move for judgment as a matter of law before the case was submitted to the jury.  Therefore, she is precluded from moving for judgment as a matter of law for the first time under Rule 50(b).

Finally, Henry argues that a reasonable jury could not have rendered a verdict in favor of Bristol Hospital due to the "overwhelming evidence" of Bristol Hospital's liability. Pl's Mem. at 22. I disagree.

At trial, there was evidence presented that refuted Henry's contention that Bristol Hospital knew or should have known that Dr. Oluwole presented a foreseeable risk of harm. Although the alleged sexual assault occurred on June 11, 2011, Bristol Hospital official Jeanie Reckdenwald testified that Human Resources was not made aware of the incident until September 2012. *See* Trial Tr., 10/21/20, at 104. She also testified that once officials at Bristol Hospital received notice of Henry's complaint, they immediately commenced an investigation.

> Q: [Y]ou learned from [Henry] that she had leveled a complaint against Dr. Oluwole in September of 2012 that he sexually assaulted her, right?
>
> A: Correct . . . .
>
> Q: Okay. Now, you immediately began an investigation?
>
> A: Yes

*Id*. at 105–06.

Dr. Oluwole was terminated less than a month later. *Id*. at 159. Dr. Oluwole provided similar testimony.

> Q: Now, prior to your being terminated, sir, on October 2, 2012, you were interviewed by Ms. Reckdenwald as part of an investigation?
>
> A: Yes, sir.
>
> Q: [And] that investigation concerned the claim of sexual assault that was lodged by Ms. Henry, right?
>
> A: That, is correct.

*See, e.g.,* Trial Tr., 10/22/20, at 62.

7

When reviewing the trial record as a whole, I am unable to conclude that "the jury has reached a seriously erroneous result or . . . [that] the verdict is a miscarriage of justice.'" *DLC Mgmt. Corp.*, 163 F.3d at 133.  Therefore, Henry's motion for a new trial is **denied**.

### IV.     Conclusion

For the reason stated above, Henry's motion for judgment as a matter of law, or in the alternative, a new trial (doc. no. 348) is **denied.**

So ordered.

Dated at Bridgeport, Connecticut, this 31st day of July 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge