UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA HENRY,<br>        Plaintiff,<br><br>        v.<br><br>BRISTOL HOSPITAL, INC., et al.,<br>        Defendants. | No. 3:13-cv-00826 (SRU) |

### RULING AND ORDER

Dr. Olakunle Oluwole ("Dr. Oluwole") has filed a motion to preclude the use of certain of plaintiff Laura Henry's ("Henry") exhibits at a hearing in damages following entry of default judgment. Dr. Oluwole objects to the introduction of Henry's proposed Exhibits 27-48 on the ground that the exhibits reflect damages associated with a massive stroke Henry suffered in 2013. Dr. Oluwole argues that Henry has failed to establish causation between his conduct and the stroke, and therefore should be precluded from recovering damages related to the stroke and its aftermath. For the following reasons, default judgment against Dr. Oluwole is **vacated in part** and his motion to preclude is **granted.**

I.    Background

Laura Henry filed this action on June 10, 2013, asserting claims against both Dr. Oluwole and Bristol Hospital. *See* Compl., Doc. No. 1. Dr. Oluwole failed to respond, and Judge Alfred Covello granted Henry's motion for default against Dr. Oluwole on February 12, 2015. *See* Doc. No. 51. He subsequently entered default judgment against Dr. Oluwole on September 22, 2015. *See* Doc. No. 100. However, Judge Covello entered default judgment solely with regard to liability and continued the hearing in damages pending the outcome of the case against Bristol Hospital. *See* Doc. No. 104. The case was then transferred to my docket.

1

On September 5, 2018, Dr. Oluwole filed a motion to set aside the default judgment. *See* Doc. No. 257. I denied that motion on May 6, 2019, noting there was evidence to suggest the default had been willful and that setting aside the judgment would prejudice Henry. *See* Doc. No. 284. Dr. Oluwole filed a motion for reconsideration on May 10, 2019 (doc. no. 286), which I denied on May 14, 2019. *See* Doc. No. 288. On June 3, 2019, Dr. Oluwole appealed that denial to the Second Circuit. *See* Doc. No. 293. Ruling by summary order, the Court held that the default judgment entered against Dr. Oluwole did not constitute a final judgment and dismissed the appeal for lack of jurisdiction. *Henry v. Oluwole*, 799 F. App'x 87, 88 (2d Cir. 2020).

On October 28, 2019, after a week-long trial, the jury returned a verdict in favor of Bristol Hospital. *See* Doc. No. 342. Dr. Oluwole then filed a second motion to set aside the default judgment, arguing that enforcement of the judgment was inequitable in light of the inconsistent jury verdict. *See* Doc. No. 345. I denied that motion, noting that Dr. Oluwole could be held liable for Henry's claims of false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress and negligence independent of the conduct of Bristol Hospital. *See* Doc. No. 359.

A hearing on the scope of Dr. Oluwole's liability for damages followed on March 13, 2020. *See* Doc. No. 369. Prior to the hearing, Henry submitted medical bills, affidavits, lost wages calculations and legal bills in support of her claim for compensatory damages and attorneys' fees. *See* Proposed Findings of Fact and Conclusions of Law ("Pl.'s Prop. Find.") (Doc. No. 367) Exhibits 1-25. Henry additionally submitted medical bills and affidavits associated with a massive stroke she suffered in 2013, alleging that the stroke had been caused by the stress and trauma of the assault by Dr. Oluwole. *Id* at 13. Dr. Oluwole objected at the hearing to recovery for damages associated with the stroke, claiming that Henry had failed to establish any causal

connection between his conduct and her stroke.[1] He subsequently filed the instant motion seeking to preclude the use of proposed exhibits that reflected damages associated with the stroke. *See* Motion to Preclude ("Def.'s Mot.") (Doc. No. 384). A second hearing on the issue of causation followed on October, 23, 2020 prior to the determination of damages and entry of final judgment. *See* Doc. No. 398.

For the following reasons, I **partially vacate** the default judgment entered against Dr. Oluwole and **grant** his motion to preclude the use of exhibits reflecting damages associated with Henry's stroke. A third hearing in damages will follow to determine the factual basis for awarding damages and entering final judgment against Dr. Oluwole on Henry's remaining claims.

## II.     Standard of Review

A party's default constitutes an admission of liability of all well-pleaded allegations in a complaint. "A defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, entry of default does not constitute an admission of damages. "Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Before awarding damages, a court "must ensure that there is a reasonable basis for the damages requested." *Gutierrez v. Taxi Club Mgmt.*, 2018 U.S. Dist. LEXIS 106808, at *7 (E.D.N.Y. June 25, 2018), *report and recommendation adopted sub nom. Gutierrez v. Taxi Club Mgmt., Inc.*,

---

[1] The official transcript of the proceeding is not yet available. This order relies on the unofficial transcript.

2018 U.S. Dist. LEXIS 118262 (E.D.N.Y. July 16, 2018). The scope of damages that may be recovered is "measured by the principle of proximate cause. The default judgment [does] not give plaintiff a blank check to recover from defendant any losses it had ever suffered from whatever source." *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973). Accordingly, only the "damages that naturally flow from the injuries pleaded" may be awarded. *Greyhound,* 973 F.2d 155 at 159. A district court may "conduct hearings or make referrals" to determine the scope of damages or "investigate any other matter" in order to enter or effectuate a default judgment. Fed. R. Civ. P. 55(b)(2).

Although a default judgment with regard to liability may be entered prior to award of damages, a default judgment is not considered an entry of final judgment until damages have been awarded. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993); *see also Dow Chem. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (where damages had not been determined "the default judgment…was in fact no more than another interlocutory entry of default").

A district court additionally has discretion to vacate entry of default under Rule 55(c) or default judgment under Rule 60(b) for "good cause." Fed. R. Civ. P. 55(c). In determining whether "good cause" has been established, a court must consider whether the default was willful, the extent to which vacating the judgment would prejudice the opposing party and the extent to which a meritorious defense has been presented. *Enron Oil Corp*, 10 F.3d 90, 97 (2d Cir. 1993). However, a court may additionally consider other equitable factors, such as whether the entry of default would bring about a "harsh or unfair result." *Id.* at 96. "The dispositions of motions for entries of defaults and default judgments and relief from the same…are left to the

sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case." *Id*. at 95.

### III.  Discussion

Dr. Oluwole objects to the introduction of Henry's Proposed Exhibits 27-48, claiming that Henry has failed to establish causation between the alleged sexual assault and stroke and therefore cannot seek damages associated with the stroke or its aftermath.[2] *See* Def.'s Mot. (Doc. No. 384). He notes additionally that the jury found that Henry had not proven by a preponderance of the evidence that an assault occurred. *Id.* Given the disparity between the jury's verdict and the entry of default judgment with respect to the claims of assault, battery, and sexual assault, I consider those claims separately from the other claims asserted against Dr. Oluwole.

####  A.  Sexual Assault, Assault, and Battery

Counts 3-9 of the Fourth Amended Complaint allege various acts of sexual assault, assault, and battery committed in violation of Connecticut common law. *See* Pl.'s Prop. Find. (Doc. No. 367) at 30. Specifically, Henry contends that on June 11, 2011 Dr. Oluwole sexually assaulted her in an exam room at Bristol Hospital during an outpatient procedure, and that as a result, she "suffered economic, serious psychological injury, emotional distress, mental anguish, embarrassment and humiliation." *Id.* at 35. Following trial against Bristol Hospital, the jury found specifically that no sexual assault, assault, or battery had been committed. *See* Verdict Form (Doc. No. 342).

In my order denying Dr. Oluwole's second motion to set aside the default judgment, I considered his argument that enforcing the default judgment was no longer equitable in light of

---

[2] Those documents have been filed in physical form with the court but do not appear on the docket.

the jury's verdict. *See* Doc. No. 359. I noted that this Circuit has narrowly interpreted the Supreme Court's ruling *Frow v. De La Vega*, 2 U.S. 552, 554 (1872), holding that *Frow* does not bar the entry of default judgment against one defendant in a multi-defendant case unless the theory of recovery is one of joint liability or "where the nature of relief, in order to be effective…must be granted against each and every defendant." *Farberware, Inc. v. Groben*, 1991 WL 123964, at *7 (S.D.N.Y. July 3, 1991) (quoting 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 55.06 (2d ed. 1988)). I concluded that neither situation directly applies here, because Henry did not assert a true theory of joint recovery and Dr. Oluwole could be held liable on at least some of Henry's claims irrespective of Bristol Hospital's liability. *See* Doc. No. 359. Accordingly, I declined at that time to vacate the default judgment. *Id.*

  Although this Circuit's narrow interpretation of *Frow* clearly permits entry of default judgment against a defaulting defendant pending the outcome of a case against other defendants where liability is joint and several, *Frow* additionally cautions courts to avoid entry of inconsistent judgments. *See Balk v. N.Y. Inst. of Tech.,* 2013 U.S. Dist. LEXIS 202935, at *3 (E.D.N.Y. Nov. 26, 2013) ("the rationale for Frow is that courts should seek to avoid rendering logically inconsistent judgments"). Accordingly, numerous district courts in this Circuit have declined to enter default judgment where such a risk is present. *See Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, 2002 U.S. Dist. LEXIS 21917, at *13 (S.D.N.Y. Nov. 12, 2002) (refusing to enter default judgment where liability of defaulting and non-defaulting defendants was "closely related"); *Hudson v. Universal Pictures Corp.*, 2004 U.S. Dist. LEXIS 11508, at *14 (E.D.N.Y. Apr. 29, 2004) (refusing to enter default judgment where "claims against similarly situated co-defendants have been found to be meritless"); *Farberware*, 1991 WL

123964 at n.4 (endorsing refusal to enter default judgment where other defendants prevail on the merits as "sound policy").

Here, the jury specifically found that Henry had not proven by a preponderance of the evidence that Dr. Oluwole committed sexual assault, assault, or battery against her. *See* Verdict Form (Doc. No. 342). Accordingly, entry of default judgment with regard to liability on the counts alleging sexual assault, battery, and assault is logically inconsistent with the jury's verdict. Under Rule 55(c) and Rule 60(b), avoiding entry of logically inconsistent judgments affords a basis for granting relief from default judgment.[3] *See Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.,* 740 F.2d 1499 (11th Cir. 1984) (vacating default judgment where non-defaulting defendants prevailed on the merits at trial); *Buck v. Clearbrook, LLC*, 2011 U.S. Dist. LEXIS 63945 (W.D. Ark. June 16, 2011) (vacating default judgment to avoid incongruous result); *Garrison v. Ringgold*, 2020 U.S. Dist. LEXIS 9962 at *3-4 (S.D. Cal. Jan. 21, 2020) (vacating default judgment entered with regard to liability where "the liability of all the defendants rests on the same course of conduct, and legal issues"); *Neilson v. Chang (In re First T.D. & Inv. Inc.)*, 253 F.3d 520, 532 (9th Cir. 2001) (reversing on appeal entry of default judgment to avoid "incongruous" result); *Rivera v. Mattingly*, 2017 U.S. Dist. LEXIS 98643 (S.D.N.Y. June 23, 2017) (report and recommendation) (recommending vacatur of default judgment for similarly situated defendants where summary judgment entered in favor of non-defaulting defendants). I find that avoiding the inequitable result of logically inconsistent

---

[3] I note that Dr. Oluwole moved to set aside the judgment under Rule 55(c) and Rule 60(b). In its summary order dismissing Dr. Oluwole's appeal, the Second Circuit noted that the entry of default judgment did not constitute a final order because damages had not yet been awarded. Given that the default judgment here is not a final judgment, I consider whether "good cause" exists to set aside the entry of default under Rule 55(c). *See also* 10 *Moore's Federal Practice* ¶ 55.80 (3d. Ed. 2020) ("Rule 55(c) was amended, effective December 1, 2015, to clarify that relief from a default judgment is limited by the demanding standards of Rule 60(b) only if the default judgment is made final under Rule 54(b) or when there is a final judgment adjudicating all claims among all parties").

judgments sufficiently establishes good cause for vacating the default judgment with respect to Counts 3-9 of the Fourth Amended Complaint.

B. <u>False Imprisonment, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Negligence</u>

In counts 10-12 and count 15 of the Fourth Amended Complaint, Henry alleges false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress and negligence. *See generally* Fourth Am. Compl. (Doc. No. 90). As discussed in my order denying Dr. Oluwole's second motion to set aside the default judgment, entry of liability on those counts is not inconsistent with the jury verdict exonerating Bristol Hospital.[4] *See* Doc. No. 359. By virtue of Judge Covello's order entering default judgment against Dr. Oluwole, liability for those claims is conclusively established. *Greyhound*, 973 F.2d 155 at 159. However, Henry bears the burden of establishing that "the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.*

Henry claims that Dr. Oluwole's conduct caused her substantial emotional pain and suffering, and led her to develop high blood pressure, post-traumatic stress disorder, anxiety, depression, insomnia, and panic attacks. *See* Fourth Am. Compl. (Doc. No. 90) at ¶ 91. She seeks compensatory damages and attorneys' fees, and has submitted medical bills, lost wages calculations, insurance coverage and affidavits to establish a basis for recovery. *See* Pl.'s Prop. Find. (Doc. No. 367). Henry additionally seeks damages for treatment and rehabilitation for the

---

[4] I note that Henry's allegations of intentional and negligent infliction of emotional distress rest in part upon the allegations of sexual assault. However, she additionally asserts intentional and negligent infliction of emotional distress resulting from her false imprisonment. *See* Fourth. Am. Compl. (Doc. No. 90) at ¶ 218 ("Defendant Oluwole intended and did intentionally or recklessly cause the Plaintiff to suffer emotional distress when Defendant Oluwole violently grabbed and held her head upon his exposed erect penis, under circumstances where she was not free to leave his office"); *see also* ¶ 239 ("the Plaintiff suffered emotional distress when the defendant grabbed and held the Plaintiff's head upon his exposed erect penis, under circumstances where she was not free to leave"). Accordingly, entry of judgment with respect to liability on those counts is not directly inconsistent with the jury's verdict.

massive stroke she suffered during an interview with Bristol Police Detectives during the investigation into the alleged 2011 assault. *Id*. Henry attributes the stroke to the stress and trauma caused by Dr. Oluwole's conduct. *Id.* Proposed Exhibits 27-48 include medical bills, pharmacy bills and legal fees associated with Henry's stroke and subsequent treatment and rehabilitation. However, some of those exhibits additionally appear to reflect damages and accrued expenses prior to the stroke.[5] *Id*. Dr. Oluwole objects to the proposed exhibits on the grounds that Henry has failed to establish causation between the admitted conduct and her stroke. *See* Def.'s Mot. (Doc. No. 384).

Under Connecticut law, a plaintiff may recover compensatory damages after a finding of liability for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.[6] *Right v. Breen*, 277 Conn. 364, 376 (2006) (economic damages available in negligence action); *Schnabel v. Tyler*, 230 Conn. 735, 737 n.2 (1994) (compensatory damages proper upon entry of liability for false imprisonment); *Cerejo v. Cerejo*, 2012 Conn. Super. LEXIS 1734, at *17 (Super. Ct. June 29, 2012) ("a plaintiff may recover compensatory damages in an action for intentional infliction of emotional distress and for the negligent infliction of emotional distress including non-economic damages for mental suffering and anguish").

However, recovery for compensatory damages is limited to injury "proximately caused by the defendant's wrongful conduct whether or not the results were reasonably to be anticipated

---

[5] Exhibits 28, 30, 43, 44, 47, 48 claim damages from before the stroke, as well as various legal fees.

[6] A court exercising supplemental jurisdiction over state law claims must apply state law in assessing damages that may be awarded for a particular claim. *See*, *e.g., E. Point Sys. v. Steven Maxim, S2K, Inc.*, 2016 U.S. Dist. LEXIS 36613, at *35-38 (D. Conn. Mar. 22, 2016) (applying Connecticut law to determine whether damages had been established with reasonable certainty); *see also Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761-62 (5th Cir. 2019) (*"*default judgment establishes the defendant's liability but not the quantity of damages…the district court must apply [state] law to determine the quantity of those damages").

from such an act…[t]here must be a causal connection between the wrongful acts and the injury that is claimed to have occurred." *Leddy v. Raccio*, 2008 Conn. Super. LEXIS 1309, at *16 (Conn. Super. Ct. May 19, 2008). An award of damages "must be based upon results which would reasonably and probably flow from the injuries the plaintiff received." *Aspiazu v. Orgera*, 205 Conn. 623, 630 (1987). A party may rely on testimony of experts or treating physicians to establish causation between an injury and underlying assault or battery, but generally must identify a causal link with a "reasonable degree of medical certainty." *Id.* at 632.

Henry has failed to prove that the damages caused by false imprisonment, intentional and negligent infliction of emotional distress, and negligence include damages stemming from her stroke. Henry states that she became ill and eventually suffered the stroke while giving evidence to detectives at the Bristol Police Department about the 2011 assault. Pl.'s Prop. Find. (Doc. No. 367) at 9. She relies on the testimony of Dr. Miller, her primary care physician, to establish causation between Dr. Oluwole's conduct and the stroke. Dr. Miller testified at the second damages hearing about his treatment of Henry both before and after her stroke, as well as her rehabilitation and future prognosis. He explained that Henry had experienced an "ischemic stroke," or a stroke caused by a blockage in an artery, and that stress can cause or contribute to an ischemic stroke.[7] However, he testified that Henry had numerous underlying conditions that may have predisposed her to an ischemic stroke, including a history of smoking, obesity and high blood pressure. Dr. Miller additionally noted that Henry had been under various additional stressors at the time of her stroke and that it was not possible to delineate which might have contributed to the stroke and to what degree. As a result, Dr. Miller could not link Dr. Oluwole's conduct to the stroke with a reasonable degree of medical certainty, and also could not

---

[7] The official transcript of the proceeding is not yet available. This order relies on the unofficial transcript.

10

effectively rule out other causal factors. *See Budney v. Zalot*, 168 Conn. 388, 388-89 (1975) ("the causal relation between an injury and its later physical effects may be established by the direct opinion of a physician…[or] by the process of eliminating causes other than the traumatic agency"). Without more, Henry cannot establish causation between Dr. Oluwole's conduct and the stroke sufficient to provide a basis for recovery of compensatory damages. *Id.; see also Greyhound*, 973 F.2d 155 at 158.

However, Henry may recover compensatory damages for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress and negligence to the extent that she can establish damages with reasonable certainty.[8] Henry can rely in part on the testimony of psychotherapist Danielle Greco, who testified at the second damages hearing with respect to Henry's treatment and prognosis both before and after the stroke. *See* Pl.'s Prop. Find. at Exhibit 6 (Doc No. 367-9). To the extent that proposed Exhibits 1-48 reflect damages attributable to the conduct alleged in counts 10-12 and 15 of the Fourth Amended Complaint, Henry can additionally rely on those exhibits. Finally, under Connecticut law, Henry may be entitled to attorneys' fees "as a component of punitive damages. To furnish a basis for recovery of such damages, the pleadings must allege and the evidence must show wanton or wilful [sic] malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought." *Stohlts v. Gilkinson*, 87 Conn. App. 634, 646 (quoting *Farrell v. Farrell*, 36 Conn. App. 305, 311 (1994)).

---

[8] Although Henry's request for relief in the Fourth Amended Complaint seeks statutory damages against Bristol Hospital for discrimination, she additionally indicates the economic and non-economic damages that she is seeking for each claim against Dr. Oluwole in each count of the Fourth Amended Complaint, sufficiently putting him on notice of damages sought for purposes of Federal Rule 54(c). *See generally* Fourth Am. Compl. (Doc. No. 90); *see also* Am. Jewish Comm. v. Berman, 2016 U.S. Dist. LEXIS 78068, at *12 (S.D.N.Y. June 15, 2016), *report and recommendation adopted sub nom.* Am. Jewish Comm. v. Berman, 2016 U.S. Dist. LEXIS 115507 (S.D.N.Y. Aug. 27, 2016) ("Rule 54(c) is satisfied where the claimant has provided all the information that it has and the damages sought at the time of the inquest do not differ in type from those sought in the complaint and flow from the injuries pleaded") (internal citations omitted).

## IV.     Conclusion

For the foregoing reasons, I **vacate** the default judgment with respect to counts 3-9 of the Fourth Amended Complaint. I additionally **grant** Dr. Oluwole's motion to preclude the use of Exhibits 27-48 to the extent that those exhibits reflect damages associated with Henry's stroke. However, to the extent Henry can demonstrate that proposed exhibits 1-48 reflect damages caused by conduct alleged in counts 10-12 and 15 of the Fourth Amended Complaint that are not associated with the 2013 stroke, she may use them to prove compensatory and punitive damages against Dr. Oluwole.

So ordered this 30th day of December 2020 in Bridgeport, Connecticut.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge