UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA HENRY,<br>　　　Plaintiff,<br><br>　　　v.<br><br>BRISTOL HOSPITAL, INC., et al.,<br>　　　Defendants. | No. 13-cv-00826 (SRU) |

## RULING ON MOTIONS FOR RECONSIDERATION

Laura Henry has filed two motions for reconsideration of an order limiting the scope of the damages she may recover from Dr. Olakunle Oluwole following the entry of default judgment against him. For the following reasons, the motions for reconsideration (Doc. No. 407, 408) are **denied.**

**I.      Background**

Laura Henry originally filed this action on June 10, 2013 against both Bristol Hospital and Dr. Olakunle Oluwole, alleging that she was sexually assaulted on hospital premises by Dr. Oluwole, a hospital employee. *See* Compl. Doc. No. 1. The case proceeded to trial against Bristol Hospital in 2019, and a jury found in favor of Bristol Hospital on all counts. *See* Doc. No. 342. Several years prior to trial, however, a default judgment had entered against Dr. Oluwole for failure to appear or respond to the first amended complaint.[1] *See* Doc. No. 100. After a hearing on the scope of Dr. Oluwole's liability in damages following the entry of default judgment, I vacated the default judgment against Dr. Oluwole on the counts directly inconsistent

---

[1] The previous orders in this case (including the challenged order, doc. no. 403) incorrectly refer to the fourth amended complaint as the basis for the default judgment; however, the first amended complaint is the complaint deemed admitted by Dr. Oluwole. *See* Doc. No. 401, Memorandum of Status Conference and Order (explaining the error).

1

with the jury's verdict in the trial against Bristol Hospital. *See* Order, Doc. No. 403. I additionally determined that Henry could not recover damages from Dr. Oluwole associated with a stroke she suffered in 2013, because she had not established causation between Dr. Oluwole's conduct and the onset of the stroke. *Id.* The motions for reconsideration followed.

## II.     Standard of Review

The standard for granting motions for reconsideration in the Second Circuit is very strict. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Courts have granted motions for reconsideration in limited circumstances, including where there has been: (1) an intervening change of controlling law; (2) new evidence has become available, or; (3) there is a need to correct a clear error or prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478).

## III.    Discussion

As discussed in more depth in the challenged order, a plaintiff seeking to recover damages in connection with a default judgment must establish that the damages sought arise from the conduct deemed admitted by virtue of default. *See Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363 (1973) (following entry of default judgment plaintiff may only recover damages "arising from the acts and injuries pleaded"); *see also Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). Because liability is deemed admitted by virtue of default, a plaintiff is not required to

establish "the legal nexus between act and injury", but still must demonstrate that "the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159.

Following entry of default judgment against Dr. Oluwole, Henry sought to recover damages associated with a stroke she suffered in August 2013 during an interview with the Bristol Police Department. The purpose of that interview was to follow up on a police report Henry had filed against Dr. Oluwole, alleging substantially the same claims of sexual assault that she originally brought in this case. *See* Exhibit # 49, Doc. No. 407-23. To establish causation between Dr. Oluwole's conduct and the stroke she suffered, Henry submitted medical records and additionally called her primary care physician, Dr. Gary Miller, as a witness at the hearing in damages on October 23, 2020. Dr. Miller had treated Henry both prior to and in the aftermath of her stroke, and was therefore able to provide an opinion on what may have caused the stroke to occur when it did. After considering his testimony in conjunction with the exhibits Henry submitted, I ultimately concluded that Henry had failed to establish causation between Dr. Oluwole's conduct and the stroke.  Based on that determination, I held that Henry could not recover damages associated with the stroke.

In her first and second motions for reconsideration, Henry argues that I erred in concluding that she failed to establish causation. She contends that she suffered a hemorrhagic stroke (a stroke caused by a ruptured blood vessel), and notes that the previous order in this case incorrectly classified the stroke as ischemic (a stroke more commonly caused by a blood clot). *See* Sec. Mot. Doc. No. 408 at 1. She attaches as exhibits to her motions medical records confirming the diagnosis of hemorrhagic stroke, as well as general information on the various causes of hemorrhagic strokes. *See* Exhibit 61 Doc. No. 408-17, Exhibit 63 Doc. No. 408-19,

3

Exhibit 66 Doc. No. 408-22. Henry maintains that the type of stroke she suffered is dispositive with regard to causation, because "the trauma of Ms. Henry reliving the details of her being violated by Defendant Oluwole on June 11, 2011 caused a blood vessel to rupture in her brain." *See* Sec. Mot. Doc. No. 408 at 2.

Henry additionally argues in her second motion for reconsideration that Dr. Oluwole improperly cast doubt on the veracity of the allegations she made to police about Dr. Oluwole's assault. *Id.* at 8. At the hearing, Dr. Oluwole raised the possibility that Bristol Police sought the interview on the day of Henry's stroke because they suspected that she had lied in her initial statement to the police. *Id.* at 9. In her motion for reconsideration, Henry argues that her allegations regarding Dr. Oluwole's conduct have remained consistent and truthful throughout the course of this lengthy litigation. *Id.* She maintains that any suggestion that she lied to police in her initial statement or that the purpose of the interview was to determine her credibility is unwarranted. *Id.* Instead, Henry argues that the purpose of the interview was for the police to follow up on her original credible allegations against Dr. Oluwole, and that the stress of having to further describe those traumatic details led to her stroke. *Id.* Because she suffered the stroke while at the police station recounting the details of the traumatic assault for purposes of the investigation into Dr. Oluwole, Henry argues, she should be able to recover damages associated with that stroke from Dr. Oluwole, including medical bills, lost wages and attorneys' fees. *Id.* at 11.

Initially, even though I agree that Henry suffered a hemorrhagic stroke, that fact does not alter my previous conclusion that Henry failed to establish causation between Dr. Oluwole's conduct and her stroke. That determination was based on Dr. Miller's testimony as well as on Henry's medical records and the exhibits she submitted prior to the hearing. At the hearing, Dr.

4

Miller testified that he was familiar with the circumstances surrounding Henry's stroke, as well as her medical history both before and after the stroke. In Dr. Miller's opinion, it was possible that the stress of reliving the details of Dr. Oluwole's conduct during the interview with Bristol Police could have contributed to the onset of a stroke.[2] However, Dr. Miller testified that he was unable to determine what the actual cause of the stroke had been, especially in light of the fact that Henry had a number of underlying conditions that predisposed her to a stroke, including hypertension, obesity, and a history of smoking. He additionally noted that Henry had been under stress due to family circumstances, which also could have been a contributing factor. Because of those other risk factors, Dr. Miller stated that he could not form an opinion with a reasonable degree of medical certainty that the stress caused by Dr. Oluwole's conduct led to Henry's stroke.

Because Dr. Miller was unable to give an opinion with a reasonable degree of medical certainty about the cause of the stroke or rule out other possible contributing factors, I determined that Henry had not established causation between Dr. Oluwole's conduct and the stroke. *See, e.g., Aspiazu v. Orgera,* 205 Conn. 623, 632 (1987) (plaintiff may rely on expert testimony to establish causal link between injury inflicted and damage but opinion must be "reasonably probable" and cannot be "based on conjecture or surmise"); *Rosa v. Lawrence & Mem'l Hosp.*, 145 Conn. App. 275, 304 (2013) ("[a]lthough we acknowledge that an expert opinion need not walk us through the precise language of causation, there must be more than mere speculation or conjecture") (internal citations omitted). The fact that Henry's stroke was hemorrhagic rather than ischemic, and the differences between those two types of strokes, does not alter that conclusion.

---

[2] Neither party has ordered the official transcript of the October 23, 2020 hearing. This order relies on the unofficial transcript.

The dispute over the purpose of the interview with the Bristol Police on the day of Henry's stroke similarly does not alter my original conclusion with regard to causation. That conclusion was not based on a determination that Henry's original statement to the police was not credible, or speculation that police sought the interview with her because they doubted those allegations. Instead, I considered Dr. Miller's testimony, focusing on the numerous factors that he identified that could have contributed to Henry's stroke, as well as his inability to say with a reasonable degree of medical certainty what the cause may have been. Henry's arguments that her allegations to the police were credible do not serve to establish causation between Dr. Oluwole's conduct and her stroke two years later.

Henry's motions for reconsideration focus on two issues—the type of stroke she suffered and the purpose of her interview with Bristol Police on the day of her stroke. My conclusion that she has not established causation, however, was based on consideration of the exhibits she submitted and the testimony of Dr. Miller. Although it is clear that Henry suffered the stroke while describing an obviously painful and traumatic experience inflicted by Dr. Oluwole, she has not sufficiently linked the cause stroke she suffered to the conduct deemed admitted by virtue of the default judgment. Because Henry has failed to identify new evidence or previously overlooked information that would reasonably be expected to alter that original conclusion, she has failed to meet the high standard required this circuit for establishing that reconsideration is warranted.

### IV. Conclusion

For the foregoing reasons, Henry's motions for reconsideration are **denied.** A final damages hearing will follow to determine the damages Henry may recover from Dr. Oluwole. As specified in my previous order, Henry may recover damages not associated with the stroke to the

6

extent she can establish those damages with reasonable certainty. She may do so by relying on exhibits previously submitted, additional exhibits and witness testimony.

So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of February 2021.

/s/ STEFAN R. UNDERHILL

Stefan R. Underhill
United States District Judge